## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| RACHEL HOWE, | **:** | |
| **Plaintiff,** | **:** | |
| **v.** | **:** | **CASE No.: 7:21-CV-2031-NSR** |
| | **:** | |
| **ETHICON, INC. and JOHNSON & JOHNSON,** | **:** | **FIRST AMENDED COMPLAINT** |
| | **:** | |
| **Defendants.** | **:** | |
| | **:** | |
| | **:** | |
| | **:** | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL DISMISSAL OF PLAINTIFF'S FIRST AMENDED COMPLAINT**

**MARTIN BAUGHMAN, PLLC**

LAURA J. BAUGHMAN
NYSB No. 4173399
SDNY No. LB4173
3141 Hood Street, Suite 600
Dallas, Texas 75219
(214) 761-6614
(214) 744-7590 (facsimile)
lbaughman@martinbaughman.com

**ATTORNEY FOR PLAINTIFF**

1

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ............................................................................................... 3

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL DISMISSAL** ........................................................................................... 5

**BACKGROUND** .............................................................................................................. 5

**LEGAL ARGUMENT** ...................................................................................................... 6

    I.    PLAINTIFF HAS SUFFICIENTLY PLED A MANUFACTURING DEFECT CLAIM ...................... 6

    II.    PLAINTIFF HAS SUFFICIENTLY PLED HER NEGLIGENCE CLAIMS, WHICH SHOULD NOT BE LIMITED TO DESIGN DEFECT AND FAILURE TO WARN ................................................ 8

    III.    PLAINTIFF HAS ADEQUATELY PLED HER FRAUD-BASED CLAIMS .................................. 11

    IV.    PLAINTIFF HAS ADEQUATELY PLED HER CLAIM FOR GROSS NEGLIGENCE .................. 13

**CONCLUSION AND PRAYER** ......................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S. Ct. 1937 (2009) ................................................................................ 4, 5

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544, 127 S. Ct. 1955 (2007) ................................................................................ 4, 5

*Berger v. Mazda Motor of Am.*,
  No. 16 CV 1835 (MKB) (CLP), 2019 U.S. Dist. LEXIS 37085 (E.D.N.Y. Mar. 6, 2019) ........ 6

*Carlen v. Coloplast Corp.*,
  No. 3:19-cv-1304-GCS, 2020 U.S. Dist. LEXIS 100731 (S.D. Ill. June 8, 2020).................... 11

*Chauvin v. State Farm Fire & Casualty Co.*,
  495 F.3d 232 (5th Cir. 2007) ................................................................................................ 5

*Faber v. Metro. Life Ins. Co.*,
  648 F.3d 98 (2d Cir. 2011) ................................................................................................... 5

*Hunter v. Shanghai Huangzhou Elec. Appliance Mfg. Co.*,
  505 F. Supp. 3d 137 (N.D.N.Y. 2020) ................................................................................. 6

*Kramer v. Showa Denko K.K.*,
  929 F. Supp. 733 (S.D.N.Y. 1996) ....................................................................................... 8

*MacPherson v. Buick Motor Co.*,
  217 N.Y. 382, 111 N.E. 1050 (N.Y. 1916) ........................................................................... 8

*McCarthy v. Olin Corp.*,
  119 F.3d 148 (2d Cir. N.Y. 1997) ........................................................................................ 8

*Minda v. Biomet, Inc.*,
  No. 98 CV 9533, 1999 U.S. App. LEXIS 15574 (2d Cir. 1999) ............................................ 6

*Rochester-Genesee Regional Transp. Authority v. Cummins, Inc.*,
  No. 09-CV-6370-MAT, 2010 U.S. Dist. LEXIS 75805 (W.D.N.Y. July 28, 2010).................. 8

*Schwartzco Enter. LLC v. TMH Mgmt., LLC*,
  60 F. Supp. 3d 331 (E.D.N.Y. 2014)..................................................................................... 13

*Smith v. Peerless Glass Co.*,
   259 N.Y. 292, 181 N.E. 576 (N.Y. 1932) ................................................................. 8

*Suez Equity Investors, L.P. v. Toronto-Dominion Bank*,
   250 F.3d 87 (2d Cir. 2001) .................................................................................... 12

*United States ex rel. Rubar v. Hayner Hoyt Corp.*,
   306 F. Supp. 3d 478 (N.D.N.Y. 2018) .................................................................... 12

*Williamson v. Stryker Corp.*,
   2013 U.S. Dist. LEXIS 104445 (S.D.N.Y. July 23, 2013)................................. 6, 7, 12

## Other Authorities

New York PJI 2:125 Products Liability-Negligence ....................................................... 8

## Rules

Fed R. Civ. Proc. 8(a)(2)............................................................................................... 5

Fed. R. Civ. Proc. 9(c) ................................................................................................. 10

## Treatises

Restatement (Third) Of Torts: Prod. Liab. § 2 (1998)...................................................... 6

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL DISMISSAL

1.      This Court should refuse to dismiss Counts II-IV of Plaintiff's First Amended Complaint (the "Complaint") because she has pled sufficient facts to plausibly show she can prevail against Defendants Ethicon, Inc. and Johnson & Johnson ("Ethicon" or "Defendants") under the standard set in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## BACKGROUND

2.      On November 21, 2016, Plaintiff Rachel Howe underwent surgery to address her stress urinary incontinence at St. Anthony Community Hospital in Warwick, New York. [Doc. 19, ¶ 56]. During this surgery, she was implanted with an Ethicon Gynecare TVT sling by Dr. Basil Kocur. *See id.* As a direct and proximate cause of having the Gynecare TVT sling implanted in her, Plaintiff has experienced significant mental and physical pain and suffering, including dyspareunia, disabling pelvic pain, neuromuscular pain, abdominal pain, leg pain, back pain, dysuria, urinary frequency, urinary urgency, stress urinary incontinence, vulvodynia, chronic bladder pain, has sustained permanent injury and scarring, has undergone medical treatment and will likely undergo further medical treatment and procedures, has suffered financial or economic loss, including, but not limited to, obligations for medical services and expenses, and/or lost income, and other damages. [Doc. 19, ¶ 59].

3.      Plaintiff filed her initial Complaint on March 9, 2021. [*See* Doc. 1]. Plaintiff filed her First Amended Complaint (the "Complaint") on July 9, 2021. [*See* Doc. 19]. Plaintiff's claims include strict liability – failure to warn (Count I); strict liability – defective manufacture and design (Count II); negligence (Count III); negligent misrepresentation (Count IV); fraud (Count V); fraudulent concealment (Count VI); constructive fraud (Count VII); violation of New York

5

Consumer Protection Act (Count VIII); and gross negligence (IX). *See id*. Defendants now challenge the sufficiency of Plaintiff's Complaint, necessitating this response.

## LEGAL ARGUMENT

4.    In ruling on a Rule 12(b)(6) motion, the court must "accept the plaintiff's well-pleaded facts as true and view them in the light most favorable to the plaintiff." *Chauvin v. State Farm Fire & Casualty Co.*, 495 F.3d 232, 237 (5th Cir. 2007). Further, "a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). The plaintiff need not set out in detail the facts upon which she bases her claim, but must make a short and plain statement of the claim showing she is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. *See* Fed R. Civ. Proc. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1973).

### I.   PLAINTIFF HAS SUFFICIENTLY PLED A MANUFACTURING DEFECT CLAIM

5.    Ethicon claims Plaintiff has failed to plead a manufacturing defect claim with sufficient specificity. This is not the case.

6.    To make out a claim of a manufacturing defect, plaintiff must demonstrate that "the product was not built to specifications or that it did not conform to the manufacturer's intended design." *Minda v. Biomet, Inc.*, No. 98 CV 9533, 1999 U.S. App. LEXIS 15574, at *2 (2d Cir. 1999). A manufacturing defect exists when there is a departure from the design specifications of

6

the product or when the product is "physically flawed, damaged, or incorrectly assembled." *Berger v. Mazda Motor of Am.*, No. 16 CV 1835 (MKB) (CLP), 2019 U.S. Dist. LEXIS 37085, at \*8 (E.D.N.Y. Mar. 6, 2019) (citing Restatement (Third) Of Torts: Prod. Liab. § 2 (1998)).

7.    To state a claim for manufacturing defect a plaintiff must satisfy two prongs, that: (1) the product was defective due to an error in the manufacturing process; and (2) the defect was the proximate cause of plaintiff's injury. *Williamson v. Stryker Corp.*, No. 12-cv-7083, 2013 WL 3833081, at \*4, 2013 U.S. Dist. LEXIS 104445, at \*10 (S.D.N.Y. July 23, 2013). A strict liability claim for manufacturing defect requires a showing that a product was defective as a result of some mishap in the manufacturing process itself, improper workmanship, or because defective materials were used in construction, that the defect rendered the product "not reasonably safe," and that the defect was the cause of plaintiff's injury. In other words, a manufacturing flaw exists when the unit in question deviates in quality and other performance standards from all of the other identical units. *Hunter v. Shanghai Huangzhou Elec. Appliance Mfg. Co.*, 505 F. Supp. 3d 137, 143 (N.D.N.Y. 2020).

8.    Throughout her Complaint, Plaintiff identifies several defects to support her manufacturing defect claim. Specifically, Plaintiff points out that the mesh could "contract or shrink"; that the mesh could "degrade" over time and causing internal tissue to degrade; and the "welding of the mesh itself during production, which creates a toxic substance that contributes to the degradation of the mesh and host tissue." [*See* Doc. 19 at 11, ¶ 31]. The inclusion of these facts renders Plaintiff's Complaint sufficient to fulfill the first prong of the test laid out in *William v. Stryker*. *See* 2013 U.S. Dist. LEXIS 104445, at \*10.

9.    Additionally, Plaintiff goes on to point out that this "degradation" leads to a number of adverse side effects, including "internal tissue" degradation (Doc. 19 at 12), "painful recurrent

7

erosions, direct muscle and soft tissue injury, nerve entrapment or irritation of adjacent nerves, and associated intractable neuropathic pain and myofascial pain" (Doc 19 at 33); and "chronic inflammatory and fibrotic reaction" which "results in continuing injury over time" (Doc. 19 at 35).

10.    Plaintiff directly ties her damages to these defects:

> As a direct and proximate cause of having the Gynecare TVT sling implanted in her, Plaintiff RACHEL HOWE has experienced significant mental and physical pain and suffering, to include dyspareunia, disabling pelvic pain, neuromuscular pain, abdominal pain, leg pain, back pain, dysuria, urinary frequency, urinary urgency, stress incontinence, vulvodynia, chronic bladder pain, has sustained permanent injury and scarring, has undergone medical treatment and will likely undergo further medical treatment and procedures, has suffered financial or economic loss, including, but not limited to, obligations for medical services and expenses, and/or lost income, and other damages.

[Doc. 19 at 59]. These facts tie the defects in the manufacture of the Pelvic Mesh Products to the injuries sustained by the Plaintiff sufficiently to fulfill the second prong of the test in *William v. Stryker*, 2013 U.S. Dist. LEXIS 104445, at *10. While pointing out a specific manufacturing defect is "not always required," Plaintiff does so in her Complaint. Therefore, dismissal of Plaintiff's manufacturing defect claim at the pleading stage is unwarranted.

## II. PLAINTIFF HAS SUFFICIENTLY PLED HER NEGLIGENCE CLAIMS, WHICH SHOULD NOT BE LIMITED TO DESIGN DEFECT AND FAILURE TO WARN

11.    Despite the Defendants' argument to the contrary, negligent failure to test and negligent failure to inspect are theories of recovery under New York law. To recover under a negligence theory, a plaintiff must establish (1) a legally recognized duty, (2) breach of the duty, (3) a causal connection between the breach and the resulting injury, (4) injury or damage resulting from the breach. *McCarthy v. Olin Corp.*, 119 F.3d 148, 156 (2d Cir. N.Y. 1997); *Rochester-Genesee Regional Transp. Authority v. Cummins, Inc.*, No. 09-CV-6370-MAT, 2010 U.S. Dist. LEXIS 75805, at *21-22 (W.D.N.Y. July 28, 2010). New York law is clear that manufacturers have a duty to test their products. "[T]here is no doubt that manufacturers owe a basic duty to

inspect and test their products to ensure that their products are reasonably safe for consumption." *Kramer v. Showa Denko K.K.*, 929 F. Supp. 733, 747 (S.D.N.Y. 1996) (interpreting New York law) (citing *Smith v. Peerless Glass Co.*, 259 N.Y. 292, 296, 181 N.E. 576 (N.Y. 1932); *MacPherson v. Buick Motor Co.*, 217 N.Y. 382, 111 N.E. 1050 (N.Y. 1916)).

12.     Defendants cite no case for the proposition that failure to adequately test is subsumed by other negligence theories. In fact, the New York Pattern Jury Instruction for negligence in products liability specifically includes negligent testing and negligent failure to inspect:

> Generally speaking, the negligence theory requires the plaintiff to prove that the manufacturer failed to exercise "reasonable care" in making the product for its intended (normal) or foreseeable uses. The negligence theory can also extend into examination of whether the defendant exercised reasonable care in inspecting or testing the product.

*See* New York PJI 2:125 Products Liability-Negligence.

13.     Further, Plaintiff has adequately pled her negligence cause of action. In her First Amended Complaint, Plaintiff stated the following with regards to her negligence claims:

> Defendants had a duty to exercise reasonable care in the design, research, manufacture, marketing, testing, advertisement, supply, promotion, packaging, sale, and distribution of the Pelvic Mesh Products, including the TVT Pelvic Mesh Product at issue in this case.

[*See* Doc. 19, ¶ 117]. Plaintiff went on to sufficiently describe many different acts of negligence on the part of Defendants.

> Defendants further breached their duty of care in the testing of their Pelvic Mesh Products, including the TVT Pelvic Mesh Product at issue in this case, by failing to conduct adequate testing to ensure that the Pelvic Mesh Products were reasonably safe for implantation in the female pelvic area prior to releasing the Pelvic Mesh Products into the market, failing to conduct post-launch testing following adverse findings in the scientific and medical literature, and by failing to conduct post-launch testing to investigate and evaluate reports in the FDA adverse event databases for their potential significance for Defendants' Pelvic Mesh Products, including the TVT Pelvic Mesh Product at issue in this case.

[*See* Doc. 19, ¶ 119].

14.     Further in the Complaint, Plaintiff laid out other specific acts of negligence:

Defendants breached the duty to take all reasonable steps necessary to design, market, test, and sell products that were not defective or unreasonably dangerous to consumers and users of the products, including Plaintiff herein. Defendants were negligent in failing to use reasonable care as described herein in designing, marketing, labeling, packaging and selling the TVT Pelvic Mesh Product at issue herein. Defendants breached the aforementioned duty by, among other things:

a.     Failing to design the TVT Pelvic Mesh Product at issue herein so as to avoid an unreasonable risk of harm to women in whom the TVT Pelvic Mesh Product at issue herein was implanted, including Plaintiff;

b.     Failing to use reasonable care in the testing of the TVT Pelvic Mesh Product at issue herein so as to avoid an unreasonable risk of harm to women in whom the TVT Pelvic Mesh Product at issue herein was implanted, including Plaintiff;

c.     Failing to use reasonable care in inspecting the TVT Pelvic Mesh Product at issue herein so as to avoid an unreasonable risk of harm to women in whom the TVT Pelvic Mesh Product at issue herein was implanted, including Plaintiff;

d.     Failing to use reasonable care in the training and instruction to physicians for the safe use of the TVT Pelvic Mesh Product at issue herein;

e.     Failing to use reasonable care in studying the TVT Pelvic Mesh Product at issue herein to evaluate its safety and to determine the nature, magnitude, and frequency of serious, life threatening complications that were known or knowable; and

g.     Otherwise negligently or carelessly designing, marketing, labeling, packaging and/or selling the TVT Pelvic Mesh Product at issue herein.

[*See* Doc. 19, ¶ 120]. Plaintiff then pled that as a proximate cause of the described acts of negligence, Plaintiff was catastrophically injured. *See id*. at ¶ 123.

15.     Plaintiff sufficiently pled her negligence claim, and as a result, dismissal of her negligence causes of action at this stage is unjustified.

10

### III.    PLAINTIFF HAS ADEQUATELY PLED HER FRAUD-BASED CLAIMS

16.    Defendants attack Plaintiff's "fraud-based" claims on two fronts.[1] First, Defendants claim Plaintiff fails to comport with the particularity requirement enumerated in Rule 9(b) of the Federal Rules of Civil Procedure. *See* Defendants' Motion, pp. 6-9. Second, Defendants argue Plaintiff fails to plead a "special relationship." *See id.* at 9. Defendants are incorrect on both counts.

17.    Plaintiff's Amended Complaint adequately complies with the special pleading requirements of Rule 9(b). *See* Fed. R. Civ. Proc. 9(b). Defendants argue that to satisfy Rule 9(b), the plaintiff must: (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent). In her Complaint, Plaintiff addresses each of these requirements.

18.    First, in her Complaint, Plaintiff points out the fraudulent statements and omissions:

> Defendants falsely and fraudulently represented to Plaintiff, her physicians, and to members of the general public that the TVT Pelvic Mesh Product was safe, effective, reliable, consistent, and better than the other similar pelvic repair procedures when used in the manner intended by the manufacturer.

[*See* Doc. 19, ¶ 134]. Second, as detailed in the preceding paragraph, Plaintiff identifies the speaker—the Defendants. Third, Plaintiff described that the statements were made "in uniform promotional materials." *See* Doc. 19, ¶ 55. Fourth, Plaintiff describes why the statements were fraudulent:

> Contrary to Defendants' representations and marketing to the medical community and to patients themselves, Defendants' Pelvic Mesh Products (including the TVT Pelvic Mesh Product at issue in this case) have high failure rates and high injury and complication rates, fail to perform as intended, require frequent and often

---

[1] In Defendants Motion, Plaintiff's claims for negligent misrepresentation (Count IV), fraud (Count V), fraudulent concealment (Count VI), constructive fraud (Count VII) and consumer protection (VIII) are addressed collectively in section III. *See* Defendants' Motion, pp. 6-10. These claims are referred to herein as Plaintiff's "fraud-based" claims, as the Defendants challenge these claims based on the heightened pleading requirements of Fed. R. Civ. P. 9(b) and the "special relationship" requirement.

debilitating operations, and have caused severe and irreversible injuries, conditions, and damage to a significant number of women, including Plaintiff.

[…]

The true facts include, but are not limited to, that the Pelvic Mesh Product was not safe to be used for treatment of urinary incontinence, and was, in fact, dangerous to the health and body of Plaintiff.

When Ethicon Defendants made these representations, it knew that they were false. Ethicon Defendants made said representations with the intent to defraud and deceive Plaintiff and/or her physicians, and with the intent to induce Plaintiff and/or her Physicians to act in the manner herein alleged, that is, to use the aforementioned product for treatment of urinary incontinence.

*See* Doc. 19, ¶¶ 67, 135-36. Plaintiff's Complaint satisfies these four requirements, and therefore her fraud-based claims are sufficiently pled.

19.     Additionally, while Defendants point out one case involving a pelvic mesh device in which the fraud-based claims were dismissed, other federal district courts have refused to dismiss the claims at the 12(b)(6) stage. *See, e.g., Carlen v. Coloplast Corp.*, No. 3:19-cv-1304-GCS, 2020 U.S. Dist. LEXIS 100731, at *20 (S.D. Ill. June 8, 2020) (finding the plaintiff's complaint satisfied the Rule 9(b) requirements of "who, what, when, where, how").

20.     Defendants also contend that Plaintiff "cannot show a special relationship" creating a duty. This argument misses the mark. Plaintiff's Complaint is sufficient because, by Ethicon's very role as a medical device manufacturer, a confidential, fiduciary or special relationship existed between Ethicon and the Plaintiff. The Southern District of New York refused to dismiss a plaintiff's fraud-based claims based on the "special relationship" element in a similar context in *Williamson*, 2013 U.S. Dist. LEXIS 104445, at *29. In that case, the court considered three factors to determine if a special relationship and duty existed: (1) whether the person making the representation held or appeared to hold unique or special expertise; (2) whether a special relationship of trust or confidence existed between the parties; and (3) whether the speaker was

aware of the use to which the information would be put and supplied it for that purpose. *See id.* (citing *Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 103 (2d Cir. 2001). The *Williamson* case analyzed the special relationship between a manufacturer of a medical device and the patient receiving the device and concluded dismissal was not warranted on "special relationship" grounds. Similarly here, the special relationship factors weigh in favor of the creation of a special relationship in the present case, and as a result, dismissal of these claims is unwarranted.

## IV.    PLAINTIFF HAS ADEQUATELY PLED HER CLAIM FOR GROSS NEGLIGENCE.

21.    Plaintiff provided facts in her Complaint to sufficiently support her claim for gross negligence. Defendants argue that to be actionable as gross negligence, a defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community[.]" *United States ex rel. Rubar v. Hayner Hoyt Corp.*, 306 F. Supp. 3d 478, 486 (N.D.N.Y. 2018). Thus, "[t]o state a claim for gross negligence under New York law, a plaintiff must establish four elements: (1) the existence of a duty; (2) a breach of that duty; (3) injury as a result thereof; and (4) conduct that evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing." *Schwartzco Enter. LLC v. TMH Mgmt., LLC*, 60 F. Supp. 3d 331, 355 (E.D.N.Y. 2014) (original alterations and internal quotations omitted).

22.    Contrary to Defendants' assertion, Plaintiff's Complaint includes ample descriptions of conduct that could be construed as extreme or outrageous. For example, Plaintiff pled:

> Defendants further breached their duty of care in the testing of their Pelvic Mesh Products, including the TVT Pelvic Mesh Product at issue in this case, by failing to conduct adequate testing to ensure that the Pelvic Mesh Products were reasonably safe for implantation in the female pelvic area prior to releasing the Pelvic Mesh

13

Products into the market, failing to conduct post-launch testing following adverse findings in the scientific and medical literature, and by failing to conduct post-launch testing to investigate and evaluate reports in the FDA adverse event databases for their potential significance for Defendants' Pelvic Mesh Products, including the TVT Pelvic Mesh Product at issue in this case

[…]

The risk of serious injuries was known or should have been known to Defendants, but in spite of these risks, Defendants continued to market their pelvic mesh devices, including the TVT Pelvic Mesh Product, for transvaginal use to physicians and patients, including Plaintiff and Plaintiff's healthcare providers, without adequate warnings.

[…]

Defendants knowingly made false claims about the safety and quality of the Defendants' Pelvic Mesh Product in the documents and marketing materials Defendants provided to the FDA, physicians, and the general public [.]

[…]

Defendants had knowledge of or should have had knowledge of, and/or were in possession of evidence demonstrating that the Pelvic Mesh Product at issue was defective and unreasonably dangerous and/or was an inappropriate choice for treatment of Plaintiff's SUI. Despite this knowledge, Defendants failed to, among other purposeful acts, inform or warn of the dangers, establish and maintain an adequate quality and post-market or post-implant surveillance system, and/or recall the Pelvic Mesh Product.

[…]

Defendants have intentionally and recklessly designed, marketed, labeled, sold and distributed their Pelvic Mesh Products (including the TVT Pelvic Mesh Product at issue in this case) with wanton and willful disregard for the rights and health of Plaintiff, and with malice, placing their economic interests above the health and safety of Plaintiff.

[…]

Upon information and belief, Defendants have consistently underreported and withheld information about the propensity of their Pelvic Mesh Products, including the TVT and its predicate devices, to fail and cause injury and complications, and have misrepresented the efficacy and safety of these products, through various means and media, actively and intentionally misleading the public.

[…]

14

Defendants suppressed this information and failed to accurately and completely disseminate or share this and other critical information with others, including Plaintiff. As a result, Defendants actively and intentionally misled and continue to mislead the public into believing that the Pelvic Mesh Products and the procedures for implantation were and are safe and effective.

[…]

Defendants have consistently underreported and withheld information about the propensity of the Pelvic Mesh Products (including the TVT Pelvic Mesh Product at issue in this case) to fail and to cause injury and complications, have misrepresented the efficacy and safety of their Pelvic Mesh Products (including the TVT Pelvic Mesh Product at issue in this case) through various means and media, and have actively and intentionally misled the FDA, the medical community, patients, and the public at large about those products.

[*See* Doc. 19, ¶¶ 34, 39, 82, 110, 119, 146, 188]. Plaintiff pled numerous acts and omissions sufficient to survive the 12(b)(6) pleading standard. Therefore, this claim should not be dismissed.

## CONCLUSION AND PRAYER

Ms. Howe respectfully asks that the Court deny Ethicon's motion to dismiss the above-referenced claims.

Date:  September 23, 2021.

Respectfully submitted,

*/s/  Laura J. Baughman*
LAURA J. BAUGHMAN
MARTIN BAUGHMAN, PLLC
NYSB No. 4173399
SDNY No. LB4173
3141 Hood Street, Suite 600
Dallas, Texas 75219
(214) 761-6614
(214) 744-7590 (facsimile)
lbaughman@martinbaughman.com

**ATTORNEY FOR PLAINTIFF**

15

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 23, 2021, the foregoing document was served on Counsel for Defendants via email.

*/s/ Rachel L. Wright*
Rachel L. Wright