UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/27/2022

RACHEL HOWE,

                Plaintiff,

-against-

ETHICON, INC. and JOHNSON & JOHNSON,

                Defendants.

No. 21-CV-2031 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

Plaintiff Rachel Howe ("Plaintiff") brings this action against Defendants Ethicon, Inc. and Johnson & Johnson ("Defendants") for products liability, negligence, and fraud in connection with Defendants' pelvic mesh product, Gynecare TVT. Before the Court is Defendants' motion to partially dismiss Plaintiff's First Amended Complaint pursuant to Federal Rule of Civil Procedure Rule 12(b)(6).

For the following reasons, Defendants' motion to dismiss is granted.

## BACKGROUND

The following facts are drawn from Plaintiff's First Amended Complaint ("FAC," ECF No. 19) and are assumed as true for purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### I. Pelvic Mesh Products

Defendant Ethicon, Inc. ("Ethicon") is a wholly owned subsidiary of Defendant Johnson & Johnson ("J&J"), a medical and diagnostics company based in New Jersey. (FAC ¶¶ 6–9.) Ethicon designed, developed, promoted, marketed, tested, trained, distributed, and sold Gynecare TVT ("the Product" or "the TVT"), which is commonly known as a pelvic mesh product. (*Id.* ¶ 6.)

1

J&J was involved in the research, development, testing, manufacture, production, marketing, promotion, distribution, and/or sale of the Product.  (*Id.* ¶ 10.)  Pelvic mesh products used for surgical management of stress urinary incontinence in women come in primarily two designs: a transobturator sling (also known as a TOT or TVT-O) and a retropubic sling (also known as a TVT).  (*Id.* ¶ 32.)  TOTs pass through the obturator space into the thigh, while TVTs hammock the urethra and exit out behind the public bone.  (*Id.*)  Plaintiff alleges TVTs can cause nerve injuries, including pudendal neuralgia, obturator neuralgia, ilioinguinal neuralgia, and Complex Regional Pain Syndrome Type 2.  (*Id.* ¶ 33.)  Defendant's Product is a TVT.  (*Id.* ¶ 32.)

The Product was targeted at women who suffer from pain, discomfort, and stress urinary incontinence as a result of weakening or damage to the walls of the vagina.  (*Id.* ¶ 25.)  The Product was represented by Defendants to correct and restore normal vagina structure by implantation of polypropylene mesh in the vaginal wall tethered in place by two arms that extend up through the buttocks or to prevent stress urinary incontinence by implantation of a strip of mesh under the urethra for support.  (*Id.*)  The Product was promoted to physicians and patients as an innovative and minimally invasive procedure with minimal local tissue reactions, trauma, or pain.  (*Id.*)  Defendants sought and obtained approval from the Food and Drug Administration ("FDA") to market the Product under Section 510(k) of the Medical Device Amendment to the Food, Drug and Cosmetics Act.  (*Id.* ¶ 26.)

II.     **Complications with Pelvic Mesh Products**

Defendants marketed and sold the Product through aggressive marketing and provision of cash and non-cash benefits to healthcare providers.  (*Id.* ¶ 30.) Plaintiff alleges Defendants offered exaggerated and misleading expectations as to the safety and utility of the Product in their advertising. (*Id.*)  The Product was marketed as a safe, effective, and reliable medical device that

can be implanted by a minimally invasive surgical procedure. (*Id.* ¶ 29.) Plaintiff alleges that, despite Defendants' representations and marketing, the Product and other pelvic mesh products have high failure, injury, and complication rates, fail to perform as intended, require frequent and debilitating revision surgeries, and have caused severe and irreversible injuries, conditions, and damage to women. (*Id.* ¶ 31.) Plaintiff alleges the Product's defects stem from the use of polypropylene material, design of the product to be inserted transvaginally into an area of the body with high levels of pathogens that adhere to the mesh, biomechanical issues with the design of the mesh that creates strong friction between the mesh and the underlying tissue, degradation of the mesh over time, welding of the mesh during production, and design of trocars which requires tissue penetration in nerve-rich environments. (*Id.* ¶¶ 27 & 31.) Although the Product was designed to be a permanent implantation, the Product contracts over time which can pull or compress important nerves, muscles, and soft issues, and can cause fibrosis of muscles, adhesions between tissues, inflammation, and chronic pelvic pain. (*Id.* ¶ 80.)

### III.  FDA Notifications

Plaintiff alleges Defendants consistently underreported and withheld information about the propensity of pelvic mesh products to fail and cause injury and complications. (*Id.* ¶ 34.) Plaintiff alleges Defendants intentionally misrepresented the efficacy and safety of these products "through various means and media." (*Id.*)

On October 20, 2008, the FDA issued a Public Health Notification that described over a thousand adverse events reported over a three-year period related to pelvic mesh products. (*Id.* ¶ 36). The FDA's MAUDE database indicated Defendants are some of the manufacturers of the products described by the notification. (*Id.*) On July 13, 2011, FDA issued a Safety Communication advising that surgical mesh used in transvaginal repair of pelvic organ prolapse

was an area of "continuing serious concern" and concluding that serious complications associated with surgical mesh were "not rare." (*Id.* ¶ 37.)

### IV. Defendants' Alleged Role

Plaintiff alleges the information contained in the FDA's October 2008 and July 2011 communications were known or knowable to Defendants. (*Id.*) Plaintiff also alleges Defendants knew that: some of the predicate devices for pelvic mesh products had high failure and complication rates; the products were not suitable for designation as predicate devices because of significant differences between them and the predicate devices; the disclosures to the FDA were incomplete or misleading; and the products were causing severe injuries and complications. (*Id.* ¶ 38.) Despite risk of serious injuries, Defendants continued to market their pelvic mesh devices without adequate warnings. (*Id.* ¶ 82.)

Plaintiff alleges Defendants suppressed this information and failed to accurately and completely disseminate this information with others, including Plaintiff. (*Id.* ¶ 39.) Defendants allegedly failed to perform or rely on proper and adequate testing and research of the risks and benefits of the Product. (*Id.* ¶ 40.) Defendants also failed to design and establish a safe and effective procedure for removal of the Product. (*Id.* ¶ 41.) Plaintiff alleges there existed feasible, reasonable, and suitable alternative designs and procedures and instruments for repair of stress urinary incontinence. (*Id.* ¶ 42.) Plaintiff alleges Defendants provided incomplete and misleading training and information to physicians to increase utility and sales of the Product. (*Id.* ¶ 44.)

On or about January 3, 2012, FDA ordered Defendants to conduct randomized, controlled clinical testing of pelvic mesh products or be ordered to cease the manufacturing, marketing, and sales of the products. (*Id.* ¶ 78.) On or about June 5, 2012, Defendants announced they were withdrawing some of their pelvic mesh products from the market, and would not be conducting

the testing ordered by the FDA. (*Id.* ¶ 79.) As of July 9, 2021, Defendants have yet to conduct any randomized, controlled clinical testing. (*Id.* ¶ 80.)

### V. Plaintiff Rachel Howe

Plaintiff Rachel Howe is a citizen and resident of New York. (*Id.* ¶ 5.) On November 21, 2016, Plaintiff was implanted with an Ethicon Gynecare TVT, Lot Number 3880812, upon the recommendation of her doctor. (*Id.* ¶ 56.) On July 31, 2018, Plaintiff underwent surgery to excise the Gynecare TVT sling due to "significant vaginal pain and dyspareunia." (*Id.* ¶ 57.) On November 13, 2019, Plaintiff underwent a second surgery for stress urinary incontinence in which she was implanted with a pubovaginal sling with fascia lata allograft, and had removal of synthetic substitute from her urethra and repositioning of her urethra. (*Id.* ¶ 58.)

Plaintiff alleges neither her nor her healthcare providers were warned of the risk of the Product. (*Id.* ¶ 62.) Plaintiff alleges she experienced "significant mental and physical pain and suffering, to include dyspareunia, pelvic pain, neuromuscular pain, abdominal pain, leg pain, back pain, dysuria, urinary frequency, urinary urgency, stress incontinence, vulvodynia, chronic bladder pain" as a result of having the Product implanted. (*Id.* ¶ 59.) Plaintiff alleges that she has undergone and will likely undergo further medical treatment and procedures. (*Id.*) Plaintiff alleges she suffered financial or economic loss. (*Id.*)

### PROCEDURAL HISTORY

On March 9, 2021, Plaintiff commenced this action against Defendants. (ECF No. 1.) On July 9, 2021, Plaintiff filed a First Amended Complaint ("FAC"). (FAC, ECF No. 19.) On September 23, 2021, Defendants filed a motion for partial dismissal of the FAC. (ECF No. 22.) Plaintiff opposed the motion. (ECF No. 24.) Defendants filed a reply memorandum in further support of their motion. (ECF No. 25.) On February 25, 2022, Defendants filed a Notice of

Supplementary Authority, notifying the Court of the resolution of a motion to dismiss in a similar case, *Dupere v. Ethicon, Inc. et al*, No. 21CV2605 (DLC), 2022 WL 523604 (S.D.N.Y. Feb. 22, 2022).  (ECF No. 28.)  Plaintiff filed a response.  (ECF No. 30.)

## LEGAL STANDARD

### I.      Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.* at 679.  While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action."  *Id.* at 662, 678 (quoting *Twombly*, 550 U.S. at 555).  The critical inquiry is whether the plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.

### II.     Rule 9(b)

While the rules of federal pleading typically require a "short and plain statement," *see* Fed. R. Civ. P. 8, fraud claims have heightened pleading requirements.  *See* Fed. R. Civ. P. 9(b).  To meet Rule 9(b)'s pleading standard, a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (citing *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).

"Allegations that are conclusory or unsupported by factual assertions are insufficient." *ATSI Commc'ns Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).

## DISCUSSION

Plaintiff brings the following counts against Defendants: (I) strict liability – failure to warn; (II) strict liability – defective manufacture and design; (III) negligence; (IV) negligent misrepresentation; (V) fraud; (VI) fraudulent concealment; (VII) constructive fraud; (VIII) violation of New York Consumer Protection Act; and (IX) gross negligence. (*See* FAC.) Defendants do not challenge the sufficiency of Plaintiff's failure to warn and design defect claims. ("Defs. Mot.," ECF No. 23 at 2.) Defendants seek to dismiss Counts II and III in part and Counts IV to IX entirely pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See id.*)

### I.   Manufacturing Defect (Count II)

Defendants seek to dismiss Plaintiff's manufacturing defect claim in Count II for failure to state a claim. Under New York law, to plead manufacturing defect, plaintiff "must show that a specific product unit was defective as a result of 'some mishap in the manufacturing process itself, improper workmanship, or because defective materials were used in construction.'" *Colon ex rel. Molina v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 85 (S.D.N.Y. 2001) (quoting *Caprara v. Chrysler Corp.*, 52 N.Y.2d 114, 129 (1981)). The defect must also be the cause of plaintiff's injury. *Id.* "[A] manufacturing flaw exists when the unit in question deviates in quality and other performance standards from all of the other identical units." *Oden v. Boston Sci. Corp.*, 330 F. Supp. 3d 877, 890 (S.D.N.Y. 2018) (quoting *Colon*, 199 F. Supp. 2d at 85). If a product cannot be inspected, a plaintiff can plead a manufacturing defect based on circumstantial evidence. *Tears v. Boston Sci. Corp.*, 344 F. Supp. 3d 500, 511 (S.D.N.Y. 2018) (citing *Speller ex rel. Miller v. Sears, Roebuck & Co.*, 100 N.Y.2d 38, 41 (2003)).

Defendants contend Plaintiff has not alleged how the manufacturing of the TVT implanted in Plaintiff deviated from other TVTs that were manufactured nor that her injuries were attributable to a manufacturing defect. (Defs. Mot. at 3–4.) The Court agrees. Although Plaintiff alleges that she was injured due to a defect of the TVT, Plaintiff's allegations all deal with the design of the Product rather than any defect in the manufacturing of the specific TVT implanted in her. The FAC is devoid of any allegation that the *manufacturing* of the TVT with Lot Number 3880812 "deviated from identical units" produced by Defendants. *See Morales v. Kimberly-Clark Corp.*, No. 18-CV-7401 (NSR), 2020 WL 2766050, at *7 (S.D.N.Y. May 27, 2020); *Goldin v. Smith & Nephew, Inc.*, No. 12 Civ. 9217(JPO), 2013 WL 1759575, at *3 (S.D.N.Y. Apr. 24, 2013) (concluding plaintiff failed to allege a manufacturing defect in absence of any facts regarding the manufacturing process and failed to establish the absence of another possible cause for her product's failure).

Accordingly, Plaintiff's manufacturing defect claim is dismissed without prejudice.

**II.     Negligence (Count III)**

For Count III, Plaintiff alleges Defendants breached their duty of care "in the design and marketing" of pelvic mesh products and "in the testing of [the Product] . . . by failing to conduct adequate testing to ensure that the Pelvic Mesh Products were reasonable safe for implantation in the female pelvic area . . . failing to conduct post-launch testing following adverse findings in the scientific and medical literature, and by failing to conduct post-launch testing to investigate and evaluate reports in the FDA adverse event databases . . . ." (FAC ¶¶ 118–119.) Defendants contend Plaintiff's failure to test claim is not a recognized theory of liability but is instead an element of her design defect claim. (Defs. Mot. at 5.) Defendants ask the Court to limit Plaintiff's negligence claim in Count III to design defect and failure to warn theories.

8

The New York Court of Appeals has described three theories of liability under negligence for a defective product: (1) manufacturing defect, (2) design defect, and (3) failure to warn. *See In re New York City Asbestos Litig.*, 27 N.Y.3d 765, 787 (2016). "Notably, the Court of Appeals did not include among its list of activities a manufacturers liability for negligence in testing" although it also "has not explicitly rejected a claim against a manufacturer of a defective product for negligence in testing." *Dupere v. Ethicon, Inc.*, No. 21CV2605 (DLC), 2022 WL 523604, at *3 (S.D.N.Y. Feb. 22, 2022). At least two federal courts applying New York law have concluded that New York does not recognize a stand-alone negligent failure-to-test theory of liability. *See id.*; *In re Zimmer NexGen Knee Implant Prod. Liab. Litig.*, No. 11 C 5468, 2017 WL 36406, at *13 (N.D. Ill. Jan. 3, 2017). This Court agrees with the detailed analysis by Judge Denise Cote in *Dupere v. Ethicon, Inc.*, which dealt with substantially similar claims regarding the Gynecare TVT product against the same defendants and determined that a failure to test theory "is subsumed by the . . . claim of negligence in design of the product. *See Dupere*, 2022 WL 523604, at *3–5 (reviewing New York law treatises and collecting cases). Consistent with the holding in *Dupere*, this Court is unpersuaded by Plaintiff's arguments and similarly finds that Plaintiff's failure to test theory brought in her Count III negligence claim would be subsumed by her design defect claim.

Accordingly, this Court dismisses with prejudice Plaintiff's negligence claim based on a failure to test theory of liability in Count III.

### III. Fraud-Based Claims (Counts IV, V, VI, VII, and VIII)

Plaintiff brings claims of negligent misrepresentation (Count IV), fraud (Count V), fraudulent concealment (Count VI), constructive fraud (Count VII), and violation of the New York Consumer Protection Act (Count VIII) against Defendants. Defendants seek to dismiss all these fraud-based causes of action for failure to meet the heightened pleading standards under Rule 9(b)

and for failure to allege facts to show Plaintiff had a confidential, fiduciary, or "special relationship of trust [or] confidence" with either defendant. (Defs. Mot. at 6–10).

### a. Pleading With Particularity

Rule 9(b) requires a plaintiff alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Plaintiff's complaint must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) were fraudulent." *Lorely Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 171 (2d Cir. 2015). Defendants argue that the FAC does not specify the time, place, or content of the alleged misrepresentations and instead only makes vague allegations that Defendants failed to disclose material information. (Defs. Mot. at 7.) The Court agrees and finds that the FAC fails to detail the statements that are allegedly fraudulent and where and when these statements are made. Plaintiff broadly alleges that Defendants made fraudulent statements "in uniform promotional materials" (FAC ¶ 55) and that Defendants misrepresented to the public that the Product "was safe, effective, reliable, consistent, and better than the other similar pelvic repair procedures when used in the manner intended by the manufacturer" (*id.* ¶ 134.) (*See* "Pl. Opp.," ECF No. 24, at 11.) The Court finds that these allegations do not meet the Rule 9(b) heightened requirements for Plaintiff to state with particularity the circumstance constituting the fraud. Notably, Plaintiff's allegations fail to "fully specif[y]" "what the false statement was . . . when the statement was made . . . where the statement was made." *Cf. Ebin v. Kangadis Food Inc.*, No. 13 CIV. 2311 JSR, 2013 WL 6504547, at *5 (S.D.N.Y. Dec. 11, 2013) (finding complaint met Rule 9(b) by specifying the fraudulent statement was the label describing the product as "100% Pure Olive Oil," made in the late 2012 or early 2013, on Capatriti containers sold at local grocery stores); *see also Dupere*, 2022

WL 523604 (finding complaint "failed to identify with any particularity any misrepresentations about TVT by the Defendants, much less when they were made, and how they were made."). Similarly, Plaintiff's vaguely-worded list of alleged misrepresentations made by Defendants in Paragraph 134 of the FAC fails to plead with particularity what specific statements were made by Defendants regarding the safety and biological compatibility of the Product, when these statements were made to the FDA, physicians, and "to members of the general public," and how such statements were made. (FAC ¶ 134.) Accordingly, the Court finds that the FAC fails to meet the Rule 9(b) heightened pleading requirements for the fraud-based claims.

    **b. Special Relationship**

Under New York law to state a claim for negligent misrepresentation, a plaintiff must plead that "defendant had a duty, as a result of a special relationship, to give correct information." *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 112 (2d Cir. 2012). To show the requisite special relationship, a plaintiff must plead defendant "possess[ed] unique or specialized expertise, or [was] in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation [was] justified." *Mandarin Trading Ltd. V. Wildenstein*, 16 N.Y.3d 173, 180 (2011) (citation omitted). A special relationship is "privity-like" and "[e]xpertise alone cannot create a special relationship where otherwise the relationship between the parties is too attenuated." *Id.* at 180–81.

Defendants allege Plaintiff has not alleged facts to show she had a special relationship with Defendants, noting that participation in a business transaction itself does not give rise to a special relationship. (Defs. Mot. at 9.) Plaintiff contends that Ethicon's "very role as a medical device manufacturer" creates a special relationship between Ethicon and Plaintiff, citing *Williamson v. Stryker Corp.*, No. 12 CIV. 7083 CM, 2013 WL 3833081 (S.D.N.Y. July 23, 2013). (Pl. Opp. at

12–13.) However, in *Williamson*, the Court found a special relationship where there were "conversations with [defendants'] representatives to decide whether Mrs. Williamson would have the device implanted." *Williamson*, 2013 WL 3833081, at *12.) Here, Plaintiff has not alleged she or her doctors specifically spoke to any Ethicon or J&J representatives about implantation of the TVT in Plaintiff or otherwise alleged any facts to show there was a special relationship of trust or confidence between the parties. *See Dupere*, 2022 WL 523604, at *7 (concluding the same over similar allegations).

For these reasons, Plaintiff's claims of negligent misrepresentation (Count IV), fraud (Count V), fraudulent concealment (Count VI), constructive fraud (Count VII), and violation of the New York Consumer Protection Act (Count VIII) are dismissed without prejudice.

**IV.     Gross Negligence (Count IX)**

In Count IX, the FAC states Defendants' alleged misconduct "were aggravated by the kind of malice, fraud, and grossly negligent disregard for the rights of others, the public, and Plaintiff, for which the law allows the imposition of exemplary damages." (FAC ¶ 182.) Defendants seek to dismiss this gross negligence claim for failure to state a claim. (Defs. Mot. at 10–11.)

A claim for gross negligence under New York law will survive "only if the plaintiff alleges facts plausibly suggesting that the defendant's conduct evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing." *Bayerische Landesbank, New York Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 61 (2d Cir. 2012) (citation omitted). "Recklessness in the context of a gross negligence claim means an extreme departure from the standards of ordinary care, such that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *Id.* (citation omitted). The Second Circuit has described this as a "high bar." *Id.*

Plaintiff alleges the FAC contains descriptions of conduct that "could be construed as extreme or outrageous." (Pl. Opp. at 13.) Plaintiff recites her allegations of Defendants' alleged misconduct in connection with manufacturing defect, design defect, and alleged underreporting and withholding of information about the propensity of the Product to fail and cause injury. (Pl. Opp. at 13–15.) But a claim of gross negligence "requires a plaintiff to prove that the defendant failed to exercise even slight care, scant care, or slight diligence, or that the defendant's actions evinced a reckless disregard for the rights of others." *Morrison v. Hoffmann-La Roche, Inc.*, No. 14-CV4476DLIRML, 2016 WL 5678546, at *6 (E.D.N.Y. Sept. 29, 2016) (quoting *Baidu, Inc. v. Register.com*, 760 F. Supp. 3d 312, 318 (S.D.N.Y. 2010)). Plaintiff's general products liability allegations do not sufficiently allege what and how Defendants' alleged misconduct was an "extreme departure from the standards of ordinary care." *See, e.g.*, *Dupere*, 2022 WL 523604, at *5–6 (finding similar allegations also insufficient to meet "this high standard").

Accordingly, Plaintiff's gross negligence claim is dismissed without prejudice.

## V.     Leave to Amend

Plaintiff asks for leave to file a Second Amended Complaint in the event this Court grants Defendants' motion to dismiss. (ECF No. 30, at 2.) Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). It is "within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). The Court hereby grants Plaintiff leave to amend file a Second Amended Complaint as to the claims dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' motion to partially dismiss the First Amended Complaint is GRANTED. Plaintiff's claims for manufacturing defect (Count II), negligent

misrepresentation (Count IV), fraud (Count V), fraudulent concealment (Count VI), constructive fraud (Count VII), violation of the New York Consumer Protection Act (Count VIII), and gross negligence (Count IX) are dismissed without prejudice. Plaintiff's failure to test theory of liability in her negligence claim in Count III is dismissed with prejudice.

Plaintiff is granted leave to file a Second Amended Complaint as to any claims that have not been dismissed with prejudice. If Plaintiff chooses to do so, Plaintiff will have until July 27, 2022 to file a Second Amended Complaint. Defendants are then directed to answer or otherwise respond by August 26, 2022. If Plaintiff fails to file a Second Amended Complaint within the time allowed, and it cannot show good cause to excuse such failure, any claims dismissed without prejudice by this order will be deemed dismissed with prejudice. If no Second Amended Complaint is timely filed, the parties are directed to complete and file a Case Management Plan and Scheduling order by August 26, 2022. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 22.

Dated: June 27, 2022　　　　　　　　　　　　　SO ORDERED:
　　　　　White Plains, New York

　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　NELSON S. ROMÁN
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge