USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __11/30/2022__

RACHEL HOWE,

                  Plaintiff,

vs.

ETHICON, INC. and JOHNSON & JOHNSON,

                  Defendants.

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

CASE NO. 7:21-CV-2031 (NSR)

**CIVIL CASE DISCOVERY PLAN**

      Plaintiff Rachel Howe ("Plaintiff") and Defendants Ethicon, Inc. and Johnson & Johnson (collectively "Defendants" or "Ethicon") hereby jointly submit this Civil Case Discovery Plan pursuant to the Court's order dated August 24, 2022 (Dt. 44), Fed. R. Civ. P. 16, and 26(f). This proposed Plan is accompanied by a proposed Scheduling Order in the form required by the Court, a proposed Protective Order, and a proposed Pathology Protocol, all separately filed on the docket.

**1)     NATURE OF MATTER:**

      This is a medical device product liability action for damages allegedly arising after Plaintiff Rachel Howe was implanted with a Gynecare TVT Retropubic device ("TVT") manufactured by Ethicon, Inc., which is a wholly owned subsidiary of Johnson & Johnson. TVT is a surgical mesh implant designed to treat stress urinary incontinence in women.

**2)     DISCOVERY PLAN:**

    **A.     Prior Orders Entered in MDL.**

      Until June 21, 2018, pelvic mesh cases such as this one would have been transferred to the Ethicon MDL for coordinated proceedings. Now that the Ethicon MDL is no longer accepting cases for transfer, the parties seek to strike a balance in managing cases that both avoids duplication and inefficiency and is consistent with the standards and requirements of individual jurisdictions. To this end, the parties agree to be bound by the Order Regarding Discovery in Non-MDL Federal Court cases entered in the MDL proceedings on July 17, 2019 (attached hereto as **Exhibit A**). The MDL Court entered this order to provide federal judges overseeing remanded or newly filed pelvic mesh cases with an understanding of the extensive corporate discovery that has been conducted in the MDL over the last several years in order to prevent duplicative discovery going forward and to facilitate efficiency in the discovery process. Upon entry of an appropriate Protective Order (a proposed Protective Order is submitted herewith), the parties stipulate that they will utilize the general discovery that has been conducted in the MDL No. 2327 and that no additional repetitive general discovery, including repetitive Company

Witness depositions, will be conducted. However, matters not previously discovered in the MDL may be the subject of discovery in this case. Although the parties agree, subject to the conditions discussed above, that Plaintiff will be entitled to utilize the Global Production and Company Depositions taken in the MDL, all objections to the admissibility of such documents and deposition testimony at trial are preserved. In addition, as set forth in Exhibit A, Plaintiffs agree to be bound by the MDL Pretrial Order No. 62 (attached hereto as **Exhibit B**) and to sign and be bound by the MDL 2327 Attorney Participation Agreement attached to that order.

The parties further agree that, in light of the bellwether trials and other trials in the Ethicon MDL, and the substantial discovery conducted to date on Ethicon's products, the parties will not engage in duplicative general expert discovery. The parties will generally utilize the depositions of general causation experts taken in the Ethicon MDL or related state court proceedings to the extent possible, in addition to the depositions of employees or former employees of Ethicon and Johnson & Johnson taken in connection with the Ethicon MDL or related state court proceedings. However, to the extent general experts in the MDL have served updated or supplemental expert reports since the MDL, and to the extent additional documents and/or the passage of time have made prior (30)(b)(6) testimony outdated, Plaintiff anticipates seeking additional depositions as needed and on these grounds. Defendants do not concede that supplemental depositions are needed and will meet and confer with Plaintiff on any specific proposed depositions. Any unresolved disputes regarding such depositions will be promptly brought to the Court's attention.

The parties further agree to be bound by the Pathology Protocol that is submitted herewith (filed separately) as a proposed consent order.

### B. Depositions.

Case-specific depositions—including Plaintiff, her treating physicians, Plaintiff's friends and family members, case-specific experts, Defendants' sales representative(s), and any other relevant witness should be taken pursuant to the Federal Rules of Civil Procedure and the Local Civil Rules of the United States District Court for the Southern District of New York, unless otherwise agreed to by stipulation. The parties will work together to equitably allocate Deposition time between (a) Plaintiff and (b) Ethicon, Inc. and Johnson & Johnson. However, depositions of Plaintiff's friends and family members may be taken at any time prior to trial.

In light of the bellwether trials and other trials in the Ethicon MDL, and the substantial discovery conducted to date on Ethicon's products, the parties will not engage in duplicative general expert discovery. The parties will utilize the depositions of general experts taken in the Ethicon MDL to the extent possible, and the parties will utilize the depositions of employees or former employees of Ethicon and Johnson & Johnson taken in connection with the Ethicon MDL. The parties acknowledge that Plaintiffs' experts may offer general opinions when giving case-specific opinions in this case. The parties agree that to the extent either party serves or designates an expert report that previously was served in the MDL and the expert was deposed on that report, the parties will not re-depose that expert. Should an expert serve a new or

supplemental expert opinion (whether the opinion is of a general nature or a case-specific nature), then that expert will be subject to deposition on those opinions as to which the expert was not previously deposed.

Certain depositions may be videotaped by the parties. Given that it is unknown how long the ongoing health crisis that has arising as a result of the Covid 19 virus will last, video telephone depositions may be needed or preferred. The parties are aware of the changing environment and orders of various courts in response to the health crisis.

**C.    Electronic Discovery.**

Disclosure or discovery of electronically stored information should be handled as follows: Plaintiff will use the global document production produced by Defendants in the Ethicon MDL, to which Plaintiff already has access.

**D.    Protective Orders.**

An agreed upon form of protective order is submitted herewith (separately filed) for the Court's consideration.

**E.    Scheduling Order.**

A proposed scheduling order in the form required by the Court is submitted herewith (separately filed) for the Court's consideration.

SO ORDERED.

Dated:   White Plains, NY
         November 30, 2022

_____

Hon. Nelson S. Román, U.S.D.J.


Dated: September 8, 2022

Respectfully submitted,

/s/ Sheila M. Bossier                          s/ Kelly S. Crawford
Sheila M. Bossier Esq. (*admitted Pro Hac Vice*)   Kelly S. Crawford, Esq.
Bossier & Associates, PLLC                     Riker Danzig LLP
1520 N. State Street                           Headquarters Plaza
Jackson, MS 39202                              One Speedwell Avenue
Phone: (601) 352-5450                          Morristown, New Jersey 07962-1981
Fax: (601) 352-5452                            Phone: (973) 451-8417
sbossier@bossier-law.com                       Fax: (973) 451-8635
*Counsel for Plaintiff*                        kcrawford@riker.com
                                               *Counsel for Defendants*

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

| IN RE: ETHICON, INC. PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | Master File No. 2:12-MD-02327 MDL No. 2327 |
|---|---|
| | JOSEPH R. GOODWIN U.S. DISTRICT JUDGE |

## ORDER REGARDING DISCOVERY IN NON-MDL FEDERAL COURT CASES

This Court is the Transferee Court presiding over the Multi-District Litigation, In re: Ethicon, Inc. Pelvic Repair System Products Liability Litigation, MDL No. 2327 ("MDL"). As of June 21, 2018, the MDL stopped accepting transferee cases. Accordingly, cases filed as of June 21, 2018 will be handled by a number of different federal courts. The purpose of this Order is to provide judges in individual federal courts who may be presiding over pelvic mesh cases with an understanding of the extensive discovery that has been conducted in the MDL over the last several years with the expectation that it will assist such judges in preventing duplicative discovery going forward and facilitate efficiency in the discovery process.

The parties have engaged in extensive discovery in the MDL cases involving the following products: Gynemesh PS, Gynemesh, Prolift, Prolift + M, Prosima, Prolene, Prolene Soft, TVT, TVT Obturator System, TVT-Secur TVT Exact, and TVT Abbrevo ("MDL Cases"). The discovery in the MDL has included the production of over 3 million documents and 27

million pages pursuant to an ESI protocol entered by this Court ("the Global Production"),[1] as well as more than 50 company depositions of employees and management at Ethicon and Johnson & Johnson and Rule 30(b)(6) corporate designees ("Company Depositions"). The foregoing discovery covered topics such as manufacturing, design, warnings, label changes, testing, adverse events, regulatory, sales and marketing, the decommercialization of products, preclinical and clinical development and studies, medical affairs, risk/benefit analyses, product management and oversight, Ethicon and J&J structure and management, payments to third parties, and database and information systems, among others. The MDL Plaintiffs' Steering Committee (the "PSC") established an electronic document repository with Crivella West in order to store these discovery materials.

In order to allow the parties in non-MDL cases to benefit from the Global Production and Company Depositions as well as any supplements that may be made, the Court adopts the following protocol:

> a. Plaintiffs in non-MDL cases must sign and abide by a protective order
> ("Protective Order") in form and substance identical to Pretrial Order No. 11, the
> MDL protective order (subject to any specific court or jurisdiction-specific
> sealing procedure and/or local rules), which will govern the use of documents in
> the individual non-MDL cases.
>
> b. Plaintiffs must also sign Pretrial Order No. 62, the Agreed Order Establishing
> MDL 2327 Fund to Compensate and Reimburse Attorneys for Services Performed

---

[1]   A copy of the ESI protocol is attached hereto. The ESI protocol requires, among other things, that the documents be produced in a searchable format and produced in a manner that identifies the sources of such documents.

and Expenses Incurred for MDL Administration and Common Benefit also known as the "Participation Agreement".

c. Once the Protective Order and Participation Agreement are signed, Plaintiffs in non-MDL cases may obtain access to the Global Production and transcripts of the Company Depositions referenced above by coordinating with counsel from the PSC and paying a fee of approximately $250.00 per month to Crivella West for the duration of such access.[2]

This Order does not apply to any case-specific discovery that may be necessary for each individual non-MDL case.

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

JUDGE JOSEPH R. GOODWIN
UNITED STATES DISTRICT COURT JUDGE

JUL 17 2019

---

[2] The Court understands that the fee is based on two users and that the fee may vary to the extent that Plaintiffs' counsel seeks additional users. In addition, the fee may be subject to reasonable changes over time.

3

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

IN RE:  ETHICON, INC.,
      PELVIC REPAIR SYSTEM
      PRODUCTS LIABILITY LITIGATION

                                      MDL No. 2327

\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-

THIS DOCUMENT RELATES TO ALL CASES

**PRETRIAL ORDER # 13**
**(Stipulation for the Production of Documents**
**and Electronically Stored Information)**

In order to meet their responsibilities under the Federal Rules of Civil Procedure relative to production of electronically stored information, and to address the method of production of physically stored information, the plaintiffs and Johnson & Johnson and Ethicon, Inc. have stipulated to and petitioned the court to enter the following Stipulation for the Production of Documents and Electronically Stored Information in this matter, attached as Exhibit A.

It is **ORDERED** that the Stipulation attached as Exhibit A applies to plaintiffs, Johnson & Johnson and Ethicon, Inc. in all actions that are or become a part of MDL 2327, until further order of the court.

The court **DIRECTS** the Clerk to file a copy of this order in 2-12-md-2327 and it shall apply to each member related case previously transferred to, removed to, or filed in this district, which includes counsel in all member cases up to and including civil action number 2-12-cv-4868.  In cases subsequently filed in this district, a copy of the most recent pretrial order will be provided by the Clerk to counsel appearing in each new action at the time of filing of the

complaint.  In cases subsequently removed or transferred to this court, a copy of the most recent pretrial order will be provided by the Clerk to counsel appearing in each new action upon removal or transfer.  It shall be the responsibility of the parties to review and abide by all pretrial orders previously entered by the court.  The orders may be accessed through the CM/ECF system or the court's website at www.wvsd.uscourts.gov.

ENTER:  August 30, 2012

Joseph R. Goodwin, Chief Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

IN RE:  ETHICON, INC.,
      PELVIC REPAIR SYSTEM
      PRODUCTS LIABILITY LITIGATION

                                        MDL No. 2327

-------------------------------------------------
THIS DOCUMENT RELATES TO ALL CASES

**EXHIBIT A**

**STIPULATION FOR THE PRODUCTION OF HARDCOPY DOCUMENTS
AND ELECTRONICALLY STORED INFORMATION**

**I. GENERAL PROVISIONS**

The parties will prepare their discovery disclosure and production documents in

accordance with the agreed-upon specifications set forth below:

**A. Prior Productions.** If there are instances where a party is asked to produce

physically-stored information (hardcopy documents) or electronically-stored information (ESI)

that was previously produced in another case, proceeding or government investigation, the

producing party should make best efforts to comply with this Stipulation. If for some reason the

producing party believes compliance with this Stipulation is too burdensome for the instances of

previous productions, the parties will meet to arrive at a mutually acceptable format that provides

the receiving party with a production that can be reasonably accessed and used by the receiving

party.

**B. Privilege Log.** The parties shall provide privilege logs in accordance with Fed.

R. Civ. P. 26(b)(5).

## II. PRODUCTION OF PHYSICALLY STORED INFORMATION

**A. TIFFs.** Each hardcopy document shall be scanned as single page, Group IV compression TIFF images using a print setting of at least 300 dots per inch (DPI). Each image shall have a unique file name, which is the Bates number of the image. To the extent technically available through the use of purely automated methods, and provided that no extra costs be incurred, original document orientation shall be maintained (*i.e.,* portrait to portrait and landscape to landscape). Each document shall be produced intact (single documents shall not be split into multiple records).

**B. Index Fields.** For each hardcopy document, the following information shall be produced and provided in the data load file at the same time that the TIFF images and the Optical Character Recognition (OCR) acquired text files are produced. Each index field shall be labeled as listed below:

(a) Beginning Production Number (ProdBeg),

(b) Ending Production Number (ProdEnd),

(c) Beginning Attachment Production Number (BegAttach),

(d) End Attachment Production Number (EndAttach),

(e) Custodian_Source,

(f) Confidentiality,

(g) Document Type, and

2

(h) DocDate (consistent with the date and time fields in Appendix 2).

**C. OCR Acquired Text Files.** For each hardcopy document, a single text file containing the OCR acquired text shall be provided along with the image file and metadata. The text file name shall be the same as the Bates number of the first page of the document to which it corresponds.

**D. Unitizing of Documents.** Distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records (*i.e.,* hardcopy documents should be logically unitized). In the case of an organized compilation of separate documents – for example, a binder containing several separate documents behind numbered tabs – the document behind each tab should be scanned separately, but the relationship among the documents in the binder should be reflected in proper coding of the BegAttach and EndAttach fields. The parties will make their best efforts to unitize documents.

## III. PRODUCTION OF ELECTRONICALLY STORED INFORMATION

**A. Culling.** The parties shall meet and confer to discuss the following in an effort to reduce the number of documents to be reviewed during the discovery process: search term culling, file type culling, de-duplication of documents, and date restrictions. In the event of a dispute regarding the search methodology or technology, the parties shall meet and confer to discuss any methodology or technologies being employed to conduct searches for and production of ESI.

**B. System Files.** Common systems and program files need not be processed, reviewed or produced. To the extent collected, the producing party shall keep an inventory of the system files not being produced and the criteria (*e.g.,* non-human readable file, etc.) for not processing

the files.  In the event of a dispute regarding such matter, the parties shall meet and confer to discuss disclosure of inventory of non-produced files and criteria for non-processing of same.

**C. De-duplication.** Removal of duplicate documents shall only be done on exact duplicate documents (based on MD5 or SHA-1 hash values at the document level) and may be done across custodians and sources. Near-duplicate documents shall be produced rather than removed.  The custodian associated with the first copy of a document processed will be considered the "pivot" custodian for that document (the custodian who will be used as the basis for determining which other collected documents are duplicates).  After each production, the producing party shall produce an "other sources" listing of all other custodians or sources who or which possessed each duplicate document.  In addition, after each production, the producing party will produce a de-duplication log that contains the Bates number of the produced version of each de-duplicated document (for lookup purposes), and the de-duplicated custodian or source,.

**D. Metadata Fields and Processing.** Each of the metadata and index fields set forth in Appendix 2 that can be reasonably extracted from a document shall be produced for that document.  If either of the parties become aware of a problem extracting metadata or any other problem with the metadata fields or processing, the party who becomes aware of the problem will notify the other party and use the party's best efforts to meet and confer with the other party to arrive at a mutually acceptable resolution to the issue.   The parties are not obligated to populate manually any of the fields in Appendix 2 if such fields cannot be extracted from a document.  The Custodian-Source shall be identified for produced documents.

4

**E. Native File Productions.** To the extent that this Stipulation indicates that ESI is to be produced in its native format, the parties will reserve specific Bates ranges for documents produced in native format. Any native files that are produced shall be produced with the Source File Path provided, as well as all applicable metadata fields set forth in <u>Appendix 2</u>. To the extent that the receiving party requests any custom slip sheets to accompany native files that are produced, the receiving party shall pay for the programming charges for developing those custom slip sheets.

**F. TIFFs.** Single page group IV compression TIFF images shall be provided using at least 300 DPI print setting. Each image shall have a unique file name, which is the Bates number of the image.  The producing party will make reasonable efforts to produce these TIFF images consistent with the appearance of the documents as kept in the ordinary course of business.

**G. Microsoft "Auto" Feature and Macros.** Microsoft Word (.doc) Microsoft Excel (.xls) and Microsoft PowerPoint (.ppt) documents should be analyzed for the "auto" features, where documents have an automatically updated date and time in the document that when processed would be inaccurate for how the document was used in the ordinary course of business.  If an "auto date" is identified, the producing party will make reasonable efforts to produce document branded with the words "Auto-updating field."

**H. Embedded Objects.** Objects embedded in Microsoft Word and RTF documents that have been embedded with the "Display as Icon" feature shall be extracted as separate documents and treated like attachments to the document.

**I. Compressed Files.** Compressed file types (*e.g.,* CAB, .GZ, .TAR, .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the

lowest possible compression resulting in individual folders and/or files.

**J. Text Files.** For each document, a single text file shall be provided along with the image files and metadata. The text file name shall be the same as the Bates number of the first page of the document to which it corresponds. File names shall not have any special characters or embedded spaces. Electronic text must be extracted directly from the native electronic file unless the document was redacted, an image file, or any other native electronic file that does not contain text to extract (e.g., non-searchable PDFs). In these instances, a text file shall be created using OCR and shall be produced in lieu of extracted text. *See* Section II.C for OCR requirements. Except in the case of redacted documents, the receiving party shall not be required to rely upon a less accurate version of the text than the producing party.

**K. Spreadsheets. Unless redacted,** spreadsheets shall be produced in native form.

**L. Microsoft PowerPoint or slide programs.** Unless redacted**,** PowerPoint presentations shall be produced in native format.

**M.  Color Copies**.  On a going forward basis for documents that have not been previously produced in the consolidated New Jersey litigation, if an original document contains color, the Producing Party will place a mark on the document indicating that the original contains color.  Upon reasonable request, the Producing Party shall provide a color copy of any such marked requested document that was produced in black and white.

**N. Structured Data.** The parties agree to negotiate separately regarding the production of structured database files and shared drives.

**O. Audio and Video Files.** All audio files and video files shall be produced in their native format with the Source File Path provided. For the purposes of identifying metadata to be collected in Appendix 2, audio and video files will be considered electronic documents.

**P. Exceptions.** The producing party shall make reasonable efforts to limit the extent of documents that cannot be processed.

## IV. ADDITIONAL PRODUCTION PROTOCOLS REGARDING ESI AND HARDCOPY DOCUMENTS

**A. Bates Numbering.** All images must be assigned a Bates number that shall always: (1) be unique across the entire document production, (2) maintain a constant length (zero/0-padded) across the entire production, (3) contain no special characters or embedded spaces, and (4) be sequential within a given document. If a Bates number or set of Bates numbers is skipped in a production, the producing party will so note in a cover letter accompanying the production.

**B. Attachments – Parent-Child Relationships.** The parent-child relationships (the association between an attachment and its parent document) shall be preserved. When attachments and embedded files are combined with their parent documents, the "BegAttach" and "EndAttach" fields, listing the unique beginning and ending number for each attachment or embedded document, must be included in the data load file.

**C. Database Load Files/Cross-Reference Files.** Documents shall be provided with (a) a delimited metadata file (.dat or .txt) and (b) an image load file (.lfp, .opt or .dii), as detailed in Appendix 1.

**D. File Size Limitation/Non-Standard Files.** The format of production of unusually large files and non-standard electronic files, large oversized documents (*e.g.,* blueprints) etc., will be discussed before production to determine the optimal production format.

**E. Replacements.** With the exception of documents that have been produced prior to the implementation of this protocol, all files that are replaced for any reason must be annotated with an "-R" designation appended to the original Bates number.  Any Replacement files that are

7

produced shall be accompanied with an indication within the letter or correspondence accompanying the production that the production contains "Replacements."

**F. Clawback Procedure.** The parties incorporate herein the clawback procedure contained in the Protective Order entered by the Court in this matter.

**G. Date Scope.** The parties agree to negotiate separately regarding any date scope limitation regarding ESI and hardcopy documents. However, it is recognized that the parties have a duty and responsibility to supplement their responses to discovery as set forth in the Federal Rules of Civil Procedure.

## V. SUPPLEMENTAL SEARCH TERMS AND ADDITIONAL CUSTODIANS

(A) If words, phrases, abbreviations, terms of art, idiomatic expressions, alternate spellings (or misspellings), or particular linguistic styles which are recurrent or that are unique to the Defendants, or which are otherwise not presently known to Plaintiffs, and such terms are reasonably calculated to lead to the discovery of information relevant to this litigation, then Plaintiffs may propose a search of the Defendants' electronically stored information using such additional search term or methodology. As with any Request for Production or for implementation of search methodologies, any such request may be the subject of objection, conferring and, if necessary, direction from the Court.

(B) If in the course of discovery, additional custodians or sources who/which are recurrent, who/which are otherwise not presently known to Plaintiffs, or who/which Plaintiffs determine may possess materials reasonably calculated to lead to the discovery of relevant evidence, are identified, Plaintiffs may request the custodial files of those additional custodians and materials from these additional sources. As with any Request for Production, any such requests may be the subject of objection, conferring and, if necessary, direction from the Court.

# VI. ARCHIVED AND BACKUP DATA

Collection and production of responsive, non-privileged ESI will include archived data that is reasonably accessible. If a producing party takes the position that any responsive backup or archived data that may contain discoverable information is not "reasonably accessible" as described by the Federal Rules of Civil Procedure, such sources shall be identified with sufficient particularity that the requesting party may make a motion with respect thereto.

# VII. COST OF ESI

Each party will bear its costs related to the production of its own hardcopy documents and ESI. However, each party reserves the right to seek costs, including but not limited to cost shifting and cost sharing, related to document production and discovery pursuant to the Federal Rules and case law. Document production is defined to include, for example, processing, collection, review and production.

# VIII. AGREEMENT DOES NOT WAIVE OR SUPERSEDE PARTIES' DISCOVERY RIGHTS AND/OR OBLIGATIONS UNDER THE FEDERAL RULES OF CIVIL PROCEDURE.

This agreement is without waiver or limitation of any rights of any party to discovery under the Federal Rules of Civil Procedure. The obligations of any party to this agreement to provide discovery under the Federal Rules of Civil Procedure are not limited or superseded by this agreement.

So stipulated this 3rd day of August, 2012.

*/s/ Donna Brown Jacobs*
*Attorney for Defendants Johnson & Johnson and Ethicon, Inc.*


*/s/ Bryan Aylstock*
*Plaintiffs Lead Counsel*

## APPENDIX 1: FILE FORMATS

Image Load Files

- Every document referenced in a production image load file shall have all available corresponding

  images, text and data.

- Documents shall be produced in only one image load file throughout the productions, unless that document is noted as being a replacement document in the Replacement field of the data load file.

- The name of the image load file shall mirror the name of the delivery volume, and should

  have an .LFP, .OPT or .DII extension (*e.g.,* ABC001.LFP).

- The volume names shall be consecutive (*e.g.,* ABC001, ABC002, . . .).

- The load file shall contain one line per image.

- Every image in the delivery volume shall be contained in the image load file.

- The image key shall be named the same as the Bates number of the image.

- Load files shall not span across media (CDs, DVDs, hard drives, etc.). A separate volume

  shall be created for each piece of media delivered.

Metadata Load Files

- The metadata load file shall use the following delimiters:

  -Column delimiter: Pipe | (ASCII 124)

  -Text qualifier: Caret ^ (ASCII 94)

  -New line: Registered sign ® (ASCII 174)

- Data for documents shall be produced in only one data load file throughout the

  productions.

- The first record shall contain the field names in the order of the data set forth in Appendix 2.

- All date/time fields shall be produced in "YYYYMMDD HH:MM AM/PM (GMT)" format.

- All date fields shall be produced in "YYYYMMDD" format.

- All time fields shall be produced in "HH:MM AM/PM (GMT)" format.

- A carriage-return line-feed shall be used to indicate the start of the next document.

- Load files shall not span across media (CDs, DVDs, hard drives, etc.). A separate volume shall be created for each piece of media delivered.

- The name of the metadata load file shall mirror the name of the delivery volume, and shall have a .DAT extension (*e.g.,* ABC001.DAT).

- The volume names shall be consecutive (*e.g.,* ABC001, ABC002, . . .).

**APPENDIX 2: ESI AND HARDCOPY METADATA AND INDEX FIELDS**

| File Name | Field Description | Populated for (email, e-documents, e-attachments, physicals) | Sample Values |
|---|---|---|---|
| ProdBeg | Bates number for the first page of the document | All | Prefix-0000001 |
| ProdEnd | Bates number for the last page of the document | All | Prefix-0000002 |
| BegAttach | Bates number for the first document of the attachment | All | Prefix-0000003 |
| EndAttach | Bates number for the last document of the attachment | All | Prefix-0000005 |
| PgCount | Number of printed pages of the document | All | 2 |
| AttachmentCount | The total number of produced attachments. | All | 3 |
| Custodian_Source | Custodian name produced in format: Lastname, Firstname. Where redundant names occur, individuals should be distinguished by an initial which is kept constant throughout productions (*e.g.*, Smith, John A. and Smith, John B. A non-human name (i.e., server name or data name) or designation such as "loose files" can be used. | All | Smith, Jane; Smith, John A.; Smith, John B.; Taylor, Michael |
| Confidentiality | Indicates if the document has been designated as "Confidential" pursuant to any applicable Protective Order | All | Consistent with the markings specified by the Protective Order |

| File Name | Field Description | Populated for (email, e-documents, e-attachments, physicals) | Sample Values |
|---|---|---|---|
| Document Type | Descriptor for the type of document: "File" for electronic documents not attached to emails; "Email" for all emails; "Attachment" for files that were attachments to emails; and "Physicals" for hard copy physical documents that have been scanned and converted to an electronic image. | All | Email |
| | | | |
| EmailSubject | Subject line of an email. | | Text of the subject line |
| To | To extent available, all SMTP addresses of all recipients that were included on the "To" line of the email. Multiple recipients should be delimited by a semicolon. | Email | Larry.murphy@email.com |
| CC | To extent available, the email addresses of all recipients that were included on the "CC" line of the email. | Email | Sstephens44@email.com |
| BCC | To extent available, the email addresses of all recipients that were included on the "BCC" line of the email. | Email | Ceo-gs@email.com |

| File Name | Field Description | Populated for (email, e-documents, e-attachments, physicals) | Sample Values |
|---|---|---|---|
| Attach | The file name(s) of the produced documents attached to emails or e-documents. E-documents with embedded documents such as documents contained in a .ZIP file should have the embedded document name(s) listed here. Multiple files should be delimited by a semicolon. | Email, e-documents | AttachFilename1.ext |
| | [We will substitute the below 7 date fields that are being produced in NJ] | | |
| DateSent | Sent date of an email message. | Email | YYYYMMDD |
| DateRcvd | Sent date of an email message. | Email | YYYYMMDD |
| DateCreated | Creation date of native file. | E-documents | YYYYMMDD |
| Date/TimeLastMod | Date and time a native file was last modified. | E-documents | YYYYMMDD |
| TimeSent | Time an email message was sent. | Email | HH:MM AM/PM |
| TimeCreated | Creation time of a native file. | E-documents | HH:MM AM/PM |
| ReceivedTime | An email's date and time when the email was received. | Email | HH:MM AM/PM |
| Title | Any value populated in the Title field of the document properties. | E-documents, e-attachments | Title |
| Subject | Any value populated in the Subject field of the document properties. | E-documents, e-attachments | Subject |

14

| File Name | Field Description | Populated for (email, e-documents, e-attachments, physicals) | Sample Values |
|-----------|------------------|------------------------------------------------------------|---------------|
| Author | Any value populated in the Author field of the document properties | E-documents, e-attachments | Author |
| DocExt | The file extension of the document is defined as the substring of the file name which follows but does not include the last occurrence of the dot character. | Email, e-documents, e-attachments | Htm |
| Size | Size (in bytes) of the original file. | Email, e-documents, e-attachments | 1408 |
|  |  |  |  |
| EdFolder/EDSource | Full path to source files (if e-docs or loose email) or folder path contained with a mail source (if NSF or PST) |  |  |
| Hash Value | Checksum for a file, a 128-bit value. | Email, E-documents, e-attachments | e4d909c290d0fb1ca06 8ff addf22cbd0 |
| Other Sources | Since global de-duping is being used – this field will track all other custodians that had possession of this file. | Email; E-Documents; e-Attachments | Last Name, First Name |
| From | The name and email address of the sender of the email | Email | Bart.Cole@email.com |

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**CHARLESTON DIVISION**

IN RE: ETHICON, INC.
PELVIC REPAIR SYSTEM
PRODUCTS LIABILITY LITIGATION         **MDL NO. 2327**
_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
**THIS DOCUMENT RELATES TO ALL CASES**

**PRETRIAL ORDER # 62**
**(AGREED ORDER ESTABLISHING MDL 2327 FUND TO COMPENSATE AND**
**REIMBURSE ATTORNEYS FOR SERVICES PERFORMED AND EXPENSES**
**INCURRED FOR MDL ADMINISTRATION AND COMMON BENEFIT)**

This Agreed Order is entered to provide for the fair and equitable sharing among
plaintiffs of the cost of special services performed and expenses incurred by "participating
counsel" acting for MDL administration and common benefit of all plaintiffs in this complex
litigation. This Agreed Order specifically incorporates by reference herein, and makes binding
upon the parties, the procedures and guidelines referenced in Pretrial Order #18 (Agreed Order
Regarding Management of Timekeeping, Cost Reimbursement and Related Common Benefit
Issues).

1.    **MDL 2327 Attorney Participation Agreement**

Attached hereto as **Exhibit "A"** and incorporated herein is a voluntary "*MDL 2327
Attorney Participation Agreement*" (sometimes referred to as the "*Participation Agreement*")
between the Plaintiffs' Steering Committee ("PSC") and other plaintiffs' attorneys. The
*Participation Agreement* is a private and cooperative agreement between plaintiffs' attorneys
only. It is not an agreement with defendant Ethicon, Inc., Ethicon, LLC, Johnson & Johnson,
American Medical Systems, Inc., Boston Scientific Corporation, C.R. Bard, Inc., Sofradim
Production SAS, Tissue Science Laboratories Limited, Mentor Worldwide LLC, Coloplast Corp.
or Cook Medical, Inc. (collectively "Defendants"). All PSC members are deemed to have

executed the *Participation Agreement*. "Participating Counsel," as that term is used in the *Participation Agreement*, include: (1) all members of the PSC and (2) any other plaintiffs' attorneys who sign the *Participation Agreement*. Participating Counsel are entitled to receive the MDL common-benefit work-product and the state court work-product of those attorneys who have also signed the *Participation Agreement* and shall be entitled to seek disbursements as Eligible Counsel as provided in section 4 of this Agreed Order. In return, Participating Counsel agree to pay the assessment amount provided in section 3 of this Agreed Order on all filed and unfiled cases or claims in state or federal court in which they share a fee interest. Counsel who choose not to execute the *Participation Agreement within ninety (90) days of entry of this Agreed Order*, are not entitled to receive Common-Benefit Work Product (as defined in the *Participation Agreement*) and may be subject to an increased assessment on all MDL 2327 cases in which they have a fee interest for the docket management and the administrative services provided by the PSC and if they receive Common-Benefit Work-Product or any other work-product created pursuant to this Agreed Order, or otherwise benefit by the work performed by the MDL and other counsel working with the MDL pursuant to this Agreed Order.

2. **Covered Claims**

This Agreed Order applies to the following Ethicon, Inc., Ethicon, LLC, Johnson & Johnson, American Medical Systems, Inc., Boston Scientific Corporation, C.R. Bard, Inc., Sofradim Production SAS, Tissue Science Laboratories Limited, Mentor Worldwide LLC, Coloplast Corp., or Cook Medical claims (hereinafter collectively referred to as "mesh injury claims"), whether direct or derivative:

        a.      All mesh injury claims now (as of the date of the entry of this Agreed Order) or hereafter subject to the jurisdiction of MDL 2327, whether

disposed of before or after remand, regardless of whether counsel holding a fee interest in such mesh injury claims have signed the *MDL 2327 Attorney Participation Agreement*, including but not limited to:

i.     All mesh injury claims settled pursuant to an MDL supervised Settlement Agreement between the parties;

ii.    All mesh injury claims participating in MDL 2327 or on tolling agreement;

iii.   All mesh injury claims where attorneys who receive Common-Benefit Work-Product or otherwise benefit by the work performed by the PSC or common-benefit counsel working with the PSC (including all firms that accessed the PSC document database prior to the date of this Agreed Order) either agree or have agreed – for monetary consideration – to settle, compromise, dismiss, or reduce the amount of a claim or, with or without trial, recover a judgment for monetary damages or other monetary relief, including compensatory and punitive damages (hereinafter a "Settlement"), with respect to any mesh injury claim are subject to an assessment on the "Gross Monetary Recovery," as provided herein; and

iv.    All mesh injury claims in which any PSC member or participating counsel has a financial interest.

b.   All mesh injury claims, in which the plaintiffs' attorneys have either:

i.     Received the benefit of MDL 2327 work-product (including all firms that accessed the PSC document database prior to the date of

3

this Agreed Order);

    ii.    Signed the *MDL 2327 Attorney Participation Agreement*, attached hereto as Exhibit "A"; or

    iii.    Are members of the PSC.

(collectively hereinafter referred to as the "Covered Claims").

**3.    <u>Assessments and Payments into the MDL 2327 Fund for All Covered Claims</u>**

    a.    A total assessment for payment of attorneys' fees and approved common-benefit and MDL expenses of five percent (5%) of the Gross Monetary Recovery shall apply to all Covered Claims (the "Assessment").

    b.    In measuring the Gross Monetary Recovery:

        i.    Include all sums to be paid in settlement of the claim;

        ii.    Exclude court costs that are to be paid by any Defendant;

        iii.    Exclude any payments made directly by any Defendant on a formal intervention asserted directly against the Defendant by third-parties, such as to physicians, hospitals, and other health-care providers on Court recognized valid subrogation claims related to treatment of plaintiff; and,

        iv.    Include the present value of any fixed and certain payments to be made in the future.

    c.    Defendants are directed to withhold the Assessment from amounts paid on any Covered Claim and to pay the Assessment directly into the MDL 2327 Fund as a credit against the Settlement or Judgment. If for any reason the Assessment is not or has not been so withheld, the Defendants as well as

4

the plaintiff and his or her counsel are jointly responsible for paying the Assessment into the MDL 2327 Fund promptly.

d.  From time to time, the PSC shall provide a list of all then-known Covered Claims to the Administrator of the MDL 2327 Fund, Defendant's Liaison Counsel, plaintiffs' counsel, and the Court or its designee.  In connection therewith, Defendant shall, upon request from the PSC, supply to the PSC a list of all then-known Covered Claims, including the name of each plaintiff and his or her attorney, if any.

e.  A Defendant and its counsel shall not distribute any potential common benefit portion of any settlement proceeds with respect to any Covered Claims until: (1) Defendant's counsel notifies the PSC in writing of the existence of a settlement and the name of the individual plaintiff's attorney holding such Covered Claims and (2) Plaintiffs' Liaison Counsel has confirmed to Defendant's counsel in writing that the individual plaintiff attorney's cases or claims are subject to an Assessment pursuant to this Agreed Order.

f.  Information regarding the amount of an Assessment paid or to be paid into the MDL 2327 Fund will be provided only to the individual plaintiff's attorney holding the Covered Claim, the court-appointed Certified Public Accountant, and the Court, and shall otherwise remain confidential and shall not be disclosed to the PSC or any of its members or to any other person unless ordered by the Court.

g.  The Assessment represents a hold-back (*In re Zyprexa Prods. Liab. Litig.*, 467 F.Supp.2d 256, 266 (2d Cir. 2006)) and shall not be altered in any way unless this Court, upon good cause shown, amends this Agreed Order.

h.  Nothing in this Agreed Order is intended to increase the attorneys' fee paid by a client, nor to in any way impair the attorney/client relationship or any contingency fee contract deemed lawful by the attorneys' respective state bar rules and/or state court orders.

i.  Upon payment of the Assessment into the MDL 2327 Fund, Defendants shall be released from any and all responsibility to any person, attorney, or claimant with respect to the Assessment placed into the MDL 2327 Fund. Any person, attorney, or claimant allegedly aggrieved by an Assessment pursuant to this Agreed Order shall seek recourse as against the MDL 2327 Fund.

j.  The Court directs for purposes of this Assessment, that the CPA previously appointed by the Court, Chuck Smith, shall oversee the handling of such funds working in conjunction with plaintiff's co-liaison counsel. Such funds shall be held separate and apart as the CPA, who shall act as Administrator of the fund, in an appropriate account.

**4.  Disbursements from the MDL 2327 Fund for Common Benefit Work**

a.  From time to time the Executive Committee may make application for disbursements for the MDL 2327 Fund for common benefit work and expenses.  Upon a proper showing and Order of the Court, payments may be made from the MDL 2327 Fund to attorneys who have provided

services or incurred expenses for the joint and common benefit of plaintiffs and claimants whose claims have been treated by this Court as a part of these proceedings in addition to their own client or clients. Such "Eligible Counsel" include:

i.       Plaintiffs' Liaison Counsel and members of the PSC;

ii.     Attorneys who have signed the *MDL 2327 Attorney Participation Agreement*; and

iii.    Other attorneys performing similar responsibilities in state court actions, provided that all cases in which any putative common-benefit attorneys have a financial interest are subject to this Agreed Order.

b.     In apportioning any fee award to Eligible Counsel, appropriate consideration will be given to the experience, talent, and contribution made by Eligible Counsel, and to the time and effort expended by each as well as to the type, necessity, and value of the particular legal services rendered.

c.     If the MDL 2327 Fund exceeds the amount needed to make payments as provided in this Agreed Order, the Court may order a refund to plaintiffs and their attorneys who were subject to the Assessment. Any such refund will be made in proportion to the amount that was assessed.

**5.   <u>Incorporation by Reference</u>**

The MDL 2327 Attorney Participation Agreement is attached hereto as Exhibit A and is incorporated by reference and has the same effect as if fully set forth in the body of this Agreed Order.

6. **No Objection to Order**

Defense counsel having reviewed this proposed order express no objection to the same.

The court **DIRECTS** the Clerk to file a copy of this order in 2:12-md-2327 and it shall apply to each member related case previously transferred to, removed to, or filed in this district, which includes counsel in all member cases up to and including civil action number 2:13-cv-20783. In cases subsequently filed in this district, a copy of the most recent pretrial order will be provided by the Clerk to counsel appearing in each new action at the time of filing of the complaint. In cases subsequently removed or transferred to this court, a copy of the most recent pretrial order will be provided by the Clerk to counsel appearing in each new action upon removal or transfer. It shall be the responsibility of the parties to review and abide by all pretrial orders previously entered by the court. The orders may be accessed through the CM/ECF system or the court's website at www.wvsd.uscourts.gov.

ENTER: August 26, 2013

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

**Submitted and Approved by the Plaintiffs' Coordinating Co-Leads, Executive Committee and Co-liaison Counsel, who have consulted and approved the same among all PSC Counsel**

By:  /s/Harry F. Bell, Jr.
Harry F. Bell, Jr.
Plaintiffs' Co-Liaison Counsel
hfbell@belllaw.com
West Virginia Bar No. 297

The Bell Law Firm, PLLC
P. O. Box 1723
Charleston, WV 25326
(304) 345-1700

8

By: /s/Paul T. Farrell, Jr.
Paul T. Farrell, Jr.
Plaintiffs' Co-Liaison Counsel
paul@greeneketchum.com
West Virginia Bar No. 7433

Greene Ketchum Bailey Walker Farrell & Tweel
P. O. Box 2389
Huntington, WV 25724-2389
(304) 525-9115

By: /s/Carl N. Frankovitch
Carl N. Frankovitch
Plaintiffs' Co-Liaison Counsel
carln@facslaw.com
West Virginia Bar No. 4746

Frankovitch Anetakis Colantonio & Simon
337 Penco Road
Weirton, WV 26062
(304) 723-4400

By: /s/Henry G. Garrard, III
Henry G. Garrard, III
Plaintiffs' Coordinating
Co-Lead Counsel and Executive Committee
hgg@bbgbalaw.com
Georgia Bar No. 286300

Blasingame Burch Garrard & Ashley, PC P. O.
Box 832
Athens, GA 30603
(706) 354-4000

By: /s/Fred Thompson, III
Fred Thompson, III
Plaintiffs' Coordinating
Co-Lead Counsel and Executive Committee
fthompson@motleyrice.com
South Carolina Bar No. 5548

Motley Rice, LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
(843) 216-9118

By: /s/Bryan F. Aylstock
Bryan F. Aylstock
Plaintiffs' Coordinating

9

Co-Lead Counsel and Executive Committee
BAylstock@awkolaw.com
Florida Bar No. 078263

Alystock Witkin Kreis & Overholtz
17 E. Main Street, Suite 200
Pensacola, FL 32502
(877) 810-4808

By:     /s/Clayton A. Clark
        Clayton A. Clark
        Plaintiffs' Executive Committee
        cclark@triallawfirm.com
        Texas Bar No. 04275750

Clark, Love & Hutson, G.P.
440 Louisiana Street, Suite 1600
Houston, TX 77002
(713) 757-1400

By:     /s/Amy Eskin
        Amy Eskin
        Plaintiffs' Executive Committee
        aeskin@levinsimes.com
        California Bar No. 127668

Levin Simes LLP
353 Sacramento Street, 20th Floor
San Francisco, CA 94111
(415) 426-3000

By:     /s/Derek H. Potts
        Derek H. Potts
        Plaintiffs' Executive Committee
        dpotts@potts-law.com
        Missouri Bar No. 44882

The Potts Law Firm, LLP
908 Broadway, 3rd Floor
Kansas City, MO 64105
(816) 931-2230

By:    /s/Aimee H. Wagstaff
Aimee H. Wagstaff
Plaintiffs' Executive Committee
Aimee.wagstaff@ahw-law.com
Colorado Bar No. 36819

Andrus Hood & Wagstaff, PC
1999 Broadway, Suite 4150
Denver, CO 80202
(303) 376-6360

By:    /s/Thomas P. Cartmell
Thomas P. Cartmell
Plaintiffs' Executive Committee
tcartmell@wagstaffcartmell.com
Missouri Bar No. 45366

Wagstaff & Cartmell, LLP
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100

By:    /s/Fidelma P. Fitzpatrick
Fidelma P. Fitzpatrick
Plaintiffs' Co-Lead Counsel
ffitzpatrick@motleyrice.com
Rhodes Island Bar No. 5417

Motley Rice, LLC
321 South Main Street, Suite 200
Providence, RI 02903
(401) 457-7700

By:    /s/Renee Baggett
Renee Baggett
Plaintiffs' Co-Lead Counsel
RBaggett@awkolaw.com
Florida Bar No. 0038186

Aylstock, Witkin, Kreis & Overholtz
17 East Main Street, Suite 200
Pensacola, FL 32502
(850) 202-1010

By:   /s/Mark C. Mueller
         Mark C. Mueller
         Plaintiffs' Co-Lead Counsel
         mark@muellerlaw.com
         Texas Bar No. 14623000

Mueller Law
404 West 7th Street
Austin, TX  78701
(512) 478-1236

By:   /s/Robert Salim
         Robert Salim
         Plaintiffs' Co-Lead Counsel
         robertsalim@cp-tel.net
         Louisiana Bar No. 11663

Law Offices of Robert L. Salim
1901 Texas Street
Natchitoches, LA  71457
(318) 352-5999

By:   /s/Riley Burnett
         Riley Burnett
         Plaintiffs' Co-Lead Counsel
         rburnett@TrialLawFirm.com
         Texas Bar No. 03428900

Law Offices of Riley L. Burnett, Jr.
440 Louisiana, Suite 1600
Houston, TX  77002
(713) 757-1400

By:   /s/Benjamin H. Anderson
         Benjamin H. Anderson
         Plaintiffs' Co-Lead Counsel
         ben@andersonlawoffices.net
         Ohio Bar No. 0067466

Anderson Law Offices, LLC
1360 West 9th Street, Suite 215
Cleveland, OH  44113
(216) 589-0256

                                    By:    /s/Martin D. Crump
                                           Martin D. Crump
                                           Plaintiffs' Co-Lead Counsel
                                           martincrump@daviscrump.com
                                           Mississippi Bar No. 10652

Davis & Crump
1712 15th Street, Suite 300
Gulfport, MS  39501
(228) 863-6000

# EXHIBIT "A"

# MDL 2327 ATTORNEY PARTICIPATION AGREEMENT

This Attorney Participation Agreement is made this _____ day of _____,

20____, by and between the Plaintiffs' Steering Committee ("PSC") appointed by the

United States District Court for the Southern District of West Virginia MDL Docket

No. 2327 and: _____

_____

(hereinafter "Participating Counsel").

WHEREAS, the PSC in association with other attorneys working for the common

benefit of plaintiffs (the "Eligible Counsel") have developed or are in the process of developing

work product which will be valuable in the litigation of state and federal court proceedings

involving claims of mesh-related injuries (the "Common Benefit Work Product"); and

WHEREAS, the Participating Counsel are desirous of acquiring the Common

Benefit Work Product and establishing an amicable, working relationship with the PSC

for the mutual benefit of their clients;

NOW, THEREFORE, in consideration of the covenants and promises contained herein,

and intending to be legally bound hereby, the parties agree as follows:

1. This Agreement incorporates by reference any Order of the Court regarding

assessments and incorporates fully herein all defined terms from such Order(s).

2. This Agreement applies to each and every claim, case, or action arising from

the use of Mesh Products in which the Participating Counsel has a financial interest, whether

the claim, case, or action is currently filed in state or federal court, or is unfiled, or is on a

tolling agreement (hereinafter collectively the "Covered Claims").

3.      With respect to each and every Covered Claim, Participating Counsel understand and agree that Defendant and its counsel will hold back a percentage proportion of the gross recovery that is equal to five percent (5%) of the Gross Monetary Recovery ("the Assessment").   Defendants or their counsel will deposit the Assessment in the MDL 2327 Common Benefit Fund ("the Fund").   Should Defendants or their  counsel fail to hold back the Assessment for any Covered Claim, Participating Counsel and their law firms  shall  deposit or cause to be deposited the Assessment in the Fund. It is the intention of the parties that absent extraordinary circumstances recognized by MDL 2327 Court Order, such Assessment shall be in full and final satisfaction of any present or future obligation on the part of each Plaintiff and/or Participating Counsel to contribute to any fund for the payment or reimbursement of any legal fees, services or expenses incurred by, or due to, the PSC, Participating Counsel, and/or any other counsel eligible to receive disbursements from the Fund pursuant to an Order of the Court regarding assessments or the Fund.

4.       The Participating Counsel, on behalf of themselves, their affiliated counsel, and their clients, hereby grant and convey to the PSC a lien upon and/or a security interest in any recovery by any client who they represent or in which they have a financial interest in connection with any mesh-related injury, to the full extent permitted by law, in order to secure payment of the Assessment.  The Participating Counsel will undertake all actions and execute all documents that are reasonably necessary to effectuate and/or perfect this lien and/or security interest.

5.      The amounts deposited in the MDL 2327 Fund shall be available for distribution to Participating Counsel pursuant and subject to any Order of the Court regarding assessments or the Fund.   Participating Counsel may apply to the Court for common-benefit fees and

reimbursement of expenses, provided that Participating Counsel:

    a.  were called upon by the Co-Lead Counsel to assist them in performing their responsibilities;

    b.  appointed by the Court as Co-liaison counsel to perform such services and assist in the overall prosecution of the claims and administration of the combined and coordinated efforts;

    c.  expended time and efforts for the common benefit either in MDL 2327 and other state litigation; and

    d.  timely submitted such time and expenses in accordance with the Court's orders and the procedures established by the PSC.

6.    This Agreement is without prejudice to the amount of fees or costs to which Participating Counsel may be entitled to in such an event.

7.    Upon request of the Participating Counsel, the PSC will provide within a reasonable time to the Participating Counsel, to the extent developed, the Common Benefit Work Product, including access to the PSC's virtual depository, and, if and when developed a complete trial package.

8.    As the litigation progresses and Common Benefit Work Product continues to be generated, the PSC will provide Participating Counsel with such work-product and will otherwise cooperate with the Participating Counsel to coordinate the MDL litigation and the state litigation for the benefit of the plaintiffs.

9.    No assessments will be due by the Participating Counsel on any recoveries resulting from a medical malpractice claims against treating physicians.

10.    Both the PSC and the Participating Counsel recognize the importance of

individual cases and the relationship between case-specific clients and their attorneys. The PSC recognizes and respects the value of the contingency fee agreement as essential in providing counsel to those who could not otherwise avail themselves of adequate legal representation, and it is the intent of the PSC to urge the Court to not interfere with any such agreements so long as they comport with the applicable state bar rules and/or state court orders.

PLAINTIFFS' STEERING COMMITTEE


By: _____


PARTICIPATING ATTORNEYS
By: